FILED ELECTRONICALLY

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 2:07-CR-00044-DLB |
| | : | |
| *Plaintiff*, | : | Honorable David J. Bunning |
| | : | |
| v. | : | |
| | : | **SENTENCING MEMORANDUM ON** |
| PAUL J. WESTWOOD | : | **BEHALF OF DEFENDANT PAUL J.** |
| | : | **WESTWOOD** |
| *Defendant*. | : | |

In setting sentences for its citizens, society seeks to serve interests in retribution or punishment, rehabilitation and protection. See 28 U.S.C. §3553(a)(2); *Kimbrough v. United States*, 2007 LEXIS 13082 (U.S.S.C. 12/10/07); *Gall v. United States*, 2007 LEXIS 13083 (U.S.S.C. 12/10/07). These interests are expressed in Sentencing Guidelines that are advisory but informative as to society's view of punishment and factors that mitigate or exacerbate sentences, and consider offense category, history and other particular factors. *Id.* The factors relate to and serve social interests in retribution, rehabilitation and protection long described in criminal law.

## *HISTORY*

Consideration of criminal history serves social interests in protection from and rehabilitation for a particular defendant; a criminal history shows a need for greater incentive to rehabilitate and a criminal propensity against which society needs protection, while a defendant with no prior contact with the justice system indicates error in judgment and easier rehabilitation.

Mr. Westwood's arrest for this offense marks his first contact with the criminal justice system. For 43 years he led a productive life without the suggestion of offense. And although the Government seized Mr. Westwood's computer to look for other occasions of the present offense,

they found none.  His history suggests that this offense is a judgment error from which he can be rehabilitated.

## *OFFENSE CATEGORY*

Offense categories assign sentencing ranges according to particular criminal acts, expressing society's view of punishment or retribution for those acts.

The charge against Mr. Westwood carries an offense category of 24, a serious offense. Nonetheless, society's need for retribution is mitigated by the lack of a victim for Mr. Westwood's crime.  Mr. Westwood didn't try to entice a minor to a meeting.  Rather, transcripts of e-mail correspondence show that a trained adult decoy invited a meeting and Mr. Westwood, whom a psychiatric report shows to be immature, inartfully resisted.  In fact, he didn't appear at the meeting, and ultimately appeared only after a follow-up call from the adult decoy.

The Government points out that Mr. Westwood's internet chats express inappropriate sexual discussion and a desire to meet in the future – all true.  He did *not*, however, act on any discussion until plainly pressured by a trained adult decoy, and then only after a follow-up telephone call from the decoy.  His reluctance is not a defense, but sets him apart from eager predators typical of the charged offense, and deserves consideration from the Court.

While the offense category indicates a serious offense, Mr. Westwood's particular offense falls on the low side of the category scale.

## *PARTICULAR FACTORS*

Finally, categories that enhance or reduce sentences serve all the social interests, particularly acceptance of responsibility.

### *1.      Acceptance of Responsibility*

Other factors include that Mr. Westwood cooperated fully with authorities and takes responsibility for his actions.  On arrest, Mr. Westwood waived his right to silence and supplied

2

truthful details about his actions. He pled guilty and expresses remorse for his actions. Society's need for retribution against such a penitent offender is mitigated, as is the need for incarceration to ensure rehabilitation or protection.

## 2.   *Organic Genesis of Offense*

Another significant factor, not specified in the Guidelines, deserves consideration. Mr. Westwood's offense was, at least in part, a product of a psychiatric condition, autism spectrum disorder with Asperger's features, that caused Mr. Westwood to gravitate toward adolescents as a peer group and turn to teenagers for ordinary social interaction. The diagnosis was made by Dr. Robert Granacher, a respected psychiatrist who based his diagnosis on a lengthy examination and, significantly, an MRI that revealed organic brain malformation causing the condition. The diagnosis was supported by physical, mental, emotional, learning and social histories. This condition made Mr. Westwood susceptible to enticements, described in his e-mail correspondence, to meet an adult decoy posing as an adolescent interested in a sexual encounter.

## 3.   *Treatment for Psychiatric Condition*

Importantly, Dr. Granacher described that sexual aspects of Mr. Westwwod's underlying condition can be controlled with medication, particularly Lupron. Since this advice, Mr. Westwood has begun treatment with a psychiatrist, Dr. James K. Mulderig of Cincinnati, and is undergoing drug therapy. Dr. Mulderig has prescribed Paxil, and expects the treatment will assist tremendously in his rehabilitation. It will certainly serve the social interest in protection.

Together, these Particular Factors mitigate society's need for retribution or protection, and assure easier rehabilitation, regarding Mr. Westwood.

## *TERM CONCURRENT WITH OHIO SENTENCE*

In December 2007, Mr. Westwood was sentenced by Judge Craig Hedric of the Butler County (Ohio) Court of Common Pleas in connection with his use of a computer to view sexual

images. The Ohio charges stemmed from his arrest on the charge before this Court. Judge Hedric imposed a prison sentence of 36 months, beginning December 28, 2007.

In announcing the sentence, Judge Hedric stated his intention that his sentence be concurrent with any sentence imposed by this Court. However, because he imposed his sentence before this Court, he said he could not control the sentences' concurrent nature. Judge Hedric is available by telephone to discuss the issue.

Mr. Westwood respectfully asks this Court to make its sentence concurrent with that of the Ohio court.

## *CREDIT FOR TIME SERVED*

Under 28 U.S.C. §3585(b), Mr. Westwood is entitled to credit for time incarcerated in connection with the offense charged by the Government. Following his arrest for the April incident, Mr. Westwood served 14 days in the Campbell County jail from about April 14 to April 28, 2007 and 11 days in the Kenton County jail from June 22 to July 3, 2007, a total of 25 days.

Mr. Westwood also asks the Court to credit Mr. Westwood for time served while confined at home before sentencing, including 186 days after July 3, 2007. A District Court may credit time on pretrial release if terms of release are functionally equivalent to a loss of freedom experienced by jail. *United States v. Beston*, 936 F. 2d 361 (8th Cir. 1981).

In *United States v. Londono-Cardona*, for example, a District Court credited time on home arrest where a defendant was confined to home, wasn't permitted more than 30 feet outside the house structure, and could leave the house only for preapproved visits to church, doctors and lawyers. 759 F. Supp. 60 (Puerto Rico 1991), See also *Moreland v. United States,* 932 F. 2d 690 (8th Cir. 1991)(credit for pretrial time in halfway house where incarcerated there for substantial part of each day); *Mills v. Taylor*, 967 F. 2d 1397 (9th Cir. 1992)(credit for pretrial time in community treatment center); *United States v. Davis,* 763 F. Supp. 638 (D. Colo. 1991)(credit for presentence

4

stay in halfway house where allowed to leave only 12 hours a day for work or other preapproved reasons); *United States v. Mori*, 798 F. Supp. 629 (D. Ha.1992)(credit for time in halfway house).

In this case, terms of Mr. Westwood's home detention were severe. He was confined inside his sister's house – he could not step outside, except for preapproved leave to attend court hearings, medical appointments or church services. He couldn't keep employment, travel, shop, or socialize. His telephone service was restricted and internet service prohibited. Confinement was enforced by ankle monitor and unannounced telephone calls. This confinement was functionally equivalent to the loss of liberty experienced by jail, and deserves credit under 28 U.S.C. §3585(b).

## *CONDITIONS OF INCARCERATION*

Mr. Westwood respectfully asks the Court to direct that his incarceration be served at a facility equipped to monitor and continue his Lupron treatments. In addition, he suffers from high blood pressure that requires administration of medicine, with monitoring.

## *CONCLUSION*

While the charge against Mr. Westwood is serious, he has responded appropriately. He pled guilty. He has also stepped forward to discover the source of his behavior and begun treatment to correct it.

The Government has agreed to a sentence on the low end of the Guideline range. At a base offense level of 24 and 3-point reduction for acceptance of responsibility, the Guidelines recommend a sentence range beginning at 37 months.

Mr. Westwood respectfully asks the Court to impose a term of incarceration of 37 months, concurrent with the 36 month sentence imposed by the Ohio court. He also asks credit for 211 days already served, including 14 days in the Campbell County Jail from about April 14 to 28, 2007, 11 days in the Kenton County Jail from June 22 to July 3, 2007, and 186 days in home detention after July 3, 2007.

          Respectfully submitted,

          /s/ Gregory A. Keyser
Gregory A. Keyser  (KBA #88633)
*Phillips Law Firm, Inc.*
9521 Montgomery Road
Cincinnati, Ohio 45242
✆ (513) 985-2500
✆ (513) 985-2503

## **CERTIFICATE OF SERVICE**

    I certify that a true copy of the foregoing has been served by ordinary U.S. mail, postage prepaid, telefax and e-mail to Hon. Anthony J. Bracke, Assistant United States Attorney, U.S. Post Office Bldg., 700 Scott Street, Suite 300, P.O. Box 72, Covington, Kentucky 41011, (859- 655-3212), Anthony.Bracke@usdoj.gov, this 31st day of December, 2007.

          /s/ Gregory A. Keyser