UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

**CRIMINAL ACTION NO. 07-44-DLB**　　　　　　　　**ELECTRONICALLY FILED**

**UNITED STATES OF AMERICA**　　　　　　　　　　　　　　　　　**PLAINTIFF**

**V.**　　　　　**UNITED STATES' SENTENCING MEMORANDUM**

**PAUL J. WESTWOOD**　　　　　　　　　　　　　　　　　　　　**DEFENDANT**

\* \* \* \* \*

Comes now the United States of America, by and through counsel, Anthony J. Bracke, Assistant United States Attorney for the Eastern District of Kentucky, and submits this sentencing memorandum.

**I. Factual Summary:**

The Defendant pled guilty to traveling in interstate commerce for the purpose of engaging in illegal sexual activity with an individual under eighteen years of age. His plea agreement contained the following factual admissions:

　　a. That the Defendant used a computer connected to the internet to exchange instant messages with an individual purported to be a thirteen year old girl on several occasions during a time period beginning on April 11, 2007 and ending on April 14, 2007.

　　b. The Defendant traveled from Ohio to Highland Heights, Campbell

County, Kentucky on April 14, 2007 for the purpose of engaging in sexual activity with a thirteen year old girl.

 c.  That the Defendant was arrested at the location given as the residence of the thirteen year old girl during their contacts.  Police found e-mails with directions to the residence of the thirteen year old girl during the search of the Defendant and his vehicle incident to his arrest.

 d.  The Defendant used a computer during his communications with the intended thirteen year old sexual partner to persuade and induce the purported minor to engage in unlawful sexual contact.

A review of the chat log between the Defendant and the undercover operative contains certain useful pieces of information.  The full chat transcript is attached to this memorandum for the Court's review.

The undercover operative identified herself as being 13 years old within 5 minutes of the beginning of the initial chat.  The Defendant was the one who initiated the discussion of meeting in person on 4/11/07 at 7:05 p.m.  The Defendant brought up his desire to engage in kissing and other physical contact on 4/11/07 at 7:22 p.m.  He again suggests meeting personally on 4/11/07 at 7:55 p.m.  He regularly asks what the girl is wearing, including questions about whether her nightgown is "see thru" and whether she is wearing panties on 4/11/07 at 8:30 p.m.  The Defendant mentions his desire to climb in bed with the girl on 4/11/07 at 8:57 p.m.

The Defendant again mentions wanting to meet the girl personally on 4/13/07 at 8:16 p.m. and 8:22 p.m. He tells her that she is "the only special one i wanna spend time with" at 9:18 p.m. on 4/13/07. Shortly after that, the Defendant again mentions he wants to have her "here with me then we can do anything we want then." She asks what he means and the Defendant responds "make out, cuddle, tickle each other, then see what happens then" at 9:32 p.m. on 4/13/07. Two minutes later, he tells the girl "i wish we were together tonight id love to feel your soft skin next to mine."

The following day, 4/14/07, the Defendant again initiates the discussion of them meeting at 11:36 a.m., "too bad we cant be together and do something fun." He goes on to tell her how much he wants to be with her to "kiss you all afternoon" and have her "warm body next to mine" at 12:35 p.m. on 4/14/07. He mentions how aroused he is and initiates a discussion of a past sexual experience. The Defendant again suggests that he would prefer to hang out with the girl "for real" at 3:05 p.m. on 4/14/07. He suggests meeting at Newport on the Levee, her house, or a park at 3:19 p.m. on 4/17/07. The Defendant discusses spending the night with the girl at her home since her "family" is gone. He asks what she would be wearing and specifically discusses the sexual activity he would like to engage in with the girl. After that, the Defendant asks for directions to meet the girl at a nearby bowling alley at 3:50 p.m. on 4/14/07. He tells her what kind of car he will be driving and the clothes he will be wearing. He gives her an approximate time of arrival and reviews the directions again to be sure he has them straight. He signs

3

off at 4:23 p.m. after telling her that he will see her around 6.

There are three phone calls between the Defendant and the operative on 4/14/07. During the second call, the Defendant indicates that he has confused the operative with another person he chats with. The Defendant tells the girl on the third call that he went to the meeting spot and couldn't find her. He tells the girl that he is sorry and that he really wanted to meet her. They agree to chat online again.

The chat resumes at approximately 6:00 p.m. on 4/14/07. The operative tells the Defendant that she is disappointed that he didn't show up. The Defendant suggests meeting the following day. The informant asks why not that evening and asks if he has another date. The Defendant denies that he has another date and tells the girl that he trying to work it out to meet her that evening. At 6:20 p.m., the Defendant indicated that he would meet the girl at approximately 8:00 p.m.

The Defendant then traveled to Highland Heights and was arrested at 8:15 p.m. on 4/14/07. A search of the Defendant's computer at his home located images of child pornography. These images were the subject of a state prosecution that resulted in the imposition of a sentence of 36 months.

## II. Guideline Calculations:

U.S. Probation has correctly determined that the Defendant's offense level to be 23 under the sentencing guidelines. The factual admissions made in his plea agreement and

the specific language of the agreement itself make it clear that the computer enhancement applies to the Defendant. The Defendant's plea agreement specifically states that both he and the United States are recommending the guidelines listed in that agreement to the Court. The agreement prohibits the Defendant from challenging the computer enhancement.

Even if the Court addresses this objection on its merits, it should still be overruled. The Defendant's statement of facts in the plea agreement confirms that he "used a computer during his communications with the intended thirteen year old sexual partner to persuade and induce the purported minor to engage in unlawful sexual conduct." While it is true that the person he was soliciting was an undercover operative rather than an actual thirteen year old girl, that fact does not change the Defendant's intent and the nature of his conduct. These things fall squarely within the conduct prohibited by the enhancement. Further, while the undercover operative was not a sworn police officer, the operative's contact with the Defendant was undertaken as part of a police investigation jointly conducted by the Campbell County Commonwealth Attorney's office, the Kentucky Bureau of Investigation, the Campbell County Police Department, and the Highland Heights Police Department. In light of this status, the operative was the functional equivalent of an undercover police officer and the enhancement is applicable to the Defendant.

### III. The Ohio Sentence

The Ohio sentence is for conduct unrelated to the present offense except for the use of the same computer for the commission of each offense. Given the separate nature of that conduct and the danger to the community illustrated by the conduct reflected in each offense, it would be more appropriate to run the sentences consecutive to one another than to essentially erase the punishment for the state offense by running the sentences concurrently.

### IV. Credit for Time on Bond

This issue is for the Attorney General (through the Bureau of Prisons) to decide, not the sentencing court, according to the language of 18 U.S.C. 3585(b).

Even if the Court were to address the merits of this request, the Defendant would not be entitled to time spent on bond in this matter despite the conditions of his bond. The Sixth Circuit has indicated that physical incarceration is required to receive credit for presentence detention. *United States v. Becak*, 954 F.2d 386, 387 (6th Cir. 1992). The District Court in the Eastern District of Kentucky has followed the reasoning of *Becak* to deny sentencing credit for time in a halfway house. *Modlin v. Hambrick*, 793 F.Supp. 136 (E.D. Ky 1992).

V. **Conclusion:**

The Presentence Investigation Report has correctly assessed the guideline range for the Defendant. He faces a guideline sentence of 46-57 months. His plea agreement precludes the Defendant from requesting a sentence below the applicable guideline range. Consistent with that plea agreement, the United States requests a sentence of 46 months in prison. We also ask that this sentence run consecutive with the state sentence for possession of child pornography and that the court reject the request for additional jail credit.

Respectfully submitted,

AMUL R. THAPAR
UNITED STATES ATTORNEY

By: s/ Anthony J. Bracke
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

On January 3, 2008, I electronically filed this document through the CM/ECF system, which will send notice of electronic filing and a copy of the foregoing to counsel for the Defendant.

s/ Anthony J. Bracke
Assistant United States Attorney